# Richmond.

## GWINNER v. MICHAEL AND OTHERS.

### November 23, 1904.

1. DEEDS—*Refusal to Accept—Recovery of Consideration.*—Where grantees refuse to accept a deed put on record for their benefit, and recover from the estate of their grantor compensation for the value of land which should have been conveyed to them, upon the theory that their refusal to accept the deed rendered it a nullity, and the decree for the compensation declares that they shall not be entitled to the sum decreed until a deed of reconveyance is executed and delivered, the effect of the transaction is to reinvest the heirs of the grantor with the title to the land, although no deed is made by the grantees.

2. EQUITY—*Sale of Lands Specifically Devised—Lands Descended—Presumption.*—Where lands specifically devised have been sold to pay debts of testator in a chancery suit brought to subject his property to the payment of his debts, there is a strong presumption that the lands descended to the heirs have been first exhausted; and, in the case in judgment, this presumption is strengthened by the facts disclosed in the record of the suit in which the lands were decreed to be sold, to which the devisees were parties.

3. EQUITY—*Laches—Debts of Decedent—Lands Devised—Lands Descended.*—If, in a suit to subject testator's lands to the payment of his debts, to which his devisees are parties, a decree is rendered for the sale of lands specifically devised, and the devisees neither object, nor ask the court first to sell lands not devised, nor to be indemnified out of unsold lands, neither they, nor those claiming under them, will be heard, years afterwards, when the lands have passed into the hands of other persons, to say that they have an equity to have made good to them, out of such other lands, the loss which they have sustained.

Appeal from a decree pronounced by the Circuit Court of Augusta county, in a suit in chancery, wherein the appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*Elder & Elder*, for the appellant.

*J., J. L., & R. Bumgardner*, for the appellees.

KEITH, P., delivered the opinion of the court.

The appellant, Frederick Gwinner, who was plaintiff in the court below, filed his bill in the Circuit Court of Augusta county, claiming to be the owner in fee of a tract of mountain land containing one thousand acres. Upon this tract Calvin Michael, a tenant of the Shenandoah Land & Anthracite Coal Company, was engaged in cutting and sawing timber, and plaintiff asked and obtained an injunction, which at the hearing was dissolved and the bill dismissed, and from this decree an appeal was taken to this court.

It appears that neither the plaintiff nor the defendant has been in the actual possession of the land in dispute, and we will, therefore, proceed to inquire into the title upon which the appellant rests his case.

The Commonwealth of Virginia, on February 9, 1796, granted a patent for a parcel of land containing 11,640 acres, situated on North Mountain, in Augusta county, Virginia, to one Major Dowell, who was the owner of several other tracts, aggregating more than twenty thousand acres. On the 6th day of March, 1826, Dowell entered into a written contract with James Kinsolving, whereby he agreed to sell him a thousand

acres of his North Mountain tract, to be selected in one parcel by Kinsolving anywhere within the boundaries of said tract, for which he was to receive a horse of considerable value, which was at once delivered by Kinsolving to him. The thousand acres of land were surveyed, and the deed prepared in the year 1828, but for some reason it was never executed. Kinsolving died prior to February 8, 1831, on which day Dowell conveyed to the heirs of Kinsolving a parcel of one thousand acres of the North Mountain land, different from that which Kinsolving had selected and caused to be surveyed, and of far less value. This deed was recorded in the clerk's office of Augusta county at the February term of the County Court, 1831.

Dowell died between 1835 and 1839. In the year last named the heirs of James Kinsolving, Sr., filed a bill in the Circuit Court of Augusta county against the devisees and heirs of Dowell, in which the agreement for the sale of a thousand acres of land in consideration of the transfer of a horse was set out, the delivery of the horse, the survey of the land and the preparation of the deed, the request of Dowell to execute the deed, and his failure to do so. In accordance with the prayer of this bill, James M. Lilly, surveyor of Augusta county, was directed to survey the land which had been selected by Kinsolving, which was done, and by deed of November 9, 1842, Lilly, as special commissioner, conveyed the land so surveyed by him to the heirs at law of James Kinsolving. Some time after this it was discovered that about half of the land thus conveyed was covered by a deed executed by Dowell to Henry Swoope, dated September 12, 1831, and of record in the clerk's office of Augusta county. This matter was brought to the attention of the court in a supplemental bill, and the result of this branch of the litigation was that the heirs of Kinsolving

recovered $297.85, with interest from March 6, 1826, as compensation for the land lost to them by reason of Swoope's superior title.

It appears that about this time the deed recorded at the February term, 1831, was brought to the attention of the court, which, by its decree of January 21, 1854, directed that it should be vacated and annulled, and that the heirs of Kinsolving should execute and file with the papers a deed duly authenticated for recordation, reconveying to "the heirs, devisees and creditors of Dowell" the title to the said one thousand acres of land, "unless they elect to retain and hold the same as before mentioned, and until such deed be executed and filed as aforesaid the heirs of said Kinsolving, or their assigns, shall not be entitled to a decree for the said sum of $774.41, with interest and costs as aforesaid," this being the sum allowed as compensation for the land lost by them by reason of Swoope's superior title.

In 1838, shortly after Dowell's death, Robert Harnsberger brought a suit against the devisees and heirs at law of Dowell, to obtain satisfaction of two decrees which he had obtained against Dowell in the year 1835. In this suit an account was taken of all the lands of Dowell, and of all the debts against him, and this case was heard together with that brought by Kinsolving's heirs.

On the 20th of May, 1854, George W. Kinsolving, one of the heirs of James Kinsolving, deceased, undertook for himself, and claiming to act as attorney in fact for his co-heirs, to reconvey to the heirs, devisees and creditors of Dowell the one thousand acres of land embraced in Dowell's deed of February 8, 1831, in execution of the mandate of the decree of January 21, 1854.

This deed of George W. Kinsolving is manifestly inoperative except as to his interest. It was, however, wholly unnecessary.

The recovery made by Kinsolving's heirs was paid to them. Their right to it rested upon the fact that the deed of February 8, 1831, never having been accepted by them, was a nullity; and in addition to this the recovery was received by them upon the condition of their making a reconveyance of this land, the object being, doubtless, to get rid of the cloud upon the title by reason of the recordation of the deed of 1831, which had already been held null and void by the court. It cannot be doubted that the result of what we have stated was to reinvest the heirs of Dowell with the title to the one thousand acres of land. .

Dowell had lived in illicit co-habitation with a woman, and at his death he, by his will, devised to her a thousand acres of land, and to each one of her four children a thousand acres, to be selected by them in the order named in the will, the women having the first choice. It appears then that this woman and her children must claim, not as heirs of Dowell, but as his devisees.

By several deeds, copies of which appear in the record, the devisees of Dowell undertook to convey portions of the thousand acre tract about which so much has been said, and, deducing title from these devisees, Frederick Gwinner, the appellant, now claims to be the owner in fee.

It seems plain that his paper title is wholly deficient. As we have seen, the title to the land in dispute was in the heirs at law of Dowell. Those under whom appellant claims are his devisees and not his heirs at law. They took under his will each a thousand acres of land, but it is not pretended that the land in dispute is in whole or in part comprised of land lying within the limits of that which the devisees took by virtue of Dowell's will. It is claimed, however, that in the chancery suit of *Harnsberger* v. *Dowell* the devised lands were sold for the payment of Dowell's debts, and that by force of this fact the de-

visees, and those claiming under them, have an equity against other lands of Dowell which were not sold, to make good the loss which they have sustained.

These devisees were parties to the suit in which their lands were sold. It was their interest and their duty to see that the lands not specifically devised were first subjected to the debts of their testator. A suggestion to that effect would have been sufficient. That the court, upon such a proposition, could not have hesitated is too plain for argument. If, therefore, the lands specifically devised were sold for the payment of Dowell's debts, one of two conclusions is inevitable—the devisees were derelict in failing to protect their own interests in a suit to which they were parties, or it was necessary to sell the devisees' lands in order to satisfy the debts reported in the cause. It is scarcely to be presumed that the devisees would have stood quietly by and permitted themselves to be stripped of the testator's bounty, with the means of protecting themselves ready to their hand. There is a strong presumption on the other hand in favor of the propriety of what was done in that suit. It would have been a palpable injustice to the devisees to sell their land, unless the sale was necessary for the payment of debts.

The record in *Harnsberger* v. *Dowell* strengthens this presumption. By decree of the 25th of June, 1853, a sale to J. M. McCue of 6,865 acres, and to Shaw and others of 2,000 acres, was confirmed to them, and the tract of 4,660 acres, reported as sold to Elisha Bryan, was directed to be resold at his risk unless within thirty days he complied with the terms of the sale. On the 21st of January, 1854, a further decree was entered, which refers to the tract of land in controversy, as follows: "It is further ordered and decreed that as soon as the deed required by said decree in said suit of *Kinsolving's Heirs* v. *Dowell's Heirs* is filed in the papers of this suit, if they elect

not to hold but to surrender and reconvey the same, Commissioners Young and Kinney, in addition to the lands heretofore directed to be sold by them, proceed to sell in like manner the 1,000 acres of land by itself and separately and apart from the other lands reconveyed by the heirs of said James Kinsolving, deceased, or their assigns, to the heirs, devisees and creditors of Major Dowell, deceased, *unless it has been included and embraced in the sale already made and reported by them.*" The language just quoted has reference to the report of Commissioners Young and Kinney, in which Young states in an addendum to the report that the debts unprovided for by the sale already made would not exceed $1,700, and then gives a statement of the unsold lands, covering in the main the tracts specifically devised by Dowell, and suggests that the court pass upon the debts so that their amount can be correctly ascertained, and appoint a commissioner "to sell all of the real estate, directing him in making the sale to sell first the 3,000 acres selected by Jane Coleman and Major D. Vines, and if the proceeds of the 3,000 acres be sufficient to pay the amount of debt, he shall not sell either the Forge tract or the 1,000 acres of the Moore land as taken by Ann Vines." He concludes as follows: "It is quite probable that this will be sufficient to pay the debts; if not, there is no doubt but that Shaw and Patterson, the purchasers from Ann Vines, will pay any remaining balance, as the undersigned is informed they are holding a balance of the purchase money to meet any liability that may fall upon the property by them purchased. With regard to the land heretofore conveyed to Kinsolving by Dowell, there is great doubt whether or not it will not require that quantity to make up the supposed quantity sold to McCue. McCue bought by the acre, and the quantity sold was gotten from the surveyor's books, and taking off such quantities as were known to have been sold by Major Dowell. It is believed by the undersigned that it was

understood at the time of the sale that the land conveyed to Kinsolving was embraced, that Kinsolving would not claim the land, having taken another course to get his demand against the estate of Dowell."

This report accounts for the language of the decree of the 21st of January, 1854, which directs the sale of the thousand acres, "unless it has been included and embraced in the sale already made and reported." The court, therefore, with reference to this matter, acted with full information; and, reaching the conclusion that the land had already been sold to McCue, proceeded to sell the land held by the devisees to satisfy the debts of Dowell.

But if this were not so, Dowell's devisees were parties to the suit in which their lands were taken. They should have asked the court first to sell the lands not devised, and if for any reason (and it is difficult to conceive a reason) the court had denied this reasonable request, they should then have asked that their loss be made good out of the unsold lands. But they did none of these things. They stood by and saw the court, having jurisdiction over the entire subject, dispose of it and enter a final decree.

We are of opinion that the plaintiff has failed to make out a paper title, or to show any equity which by any stretch of chancery practice would entitle him to the relief sought; and that the decree of the Circuit Court should be affirmed.

*Affirmed.*